```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
LOCAL 30, INTERNATIONAL UNION OF
OPERATING ENGINEERS, AFL-CIO,

                    Petitioner,          MEMORANDUM & ORDER
                                         13-CV-2499(JS)(GRB)
        -against-

WOOD GROUP POWER OPERATIONS LLC,

                    Respondent.
----------------------------------------X
APPEARANCES
For Petitioner:     Alexandra J. Howell, Esq.
                    Robert T. McGovern, Esq.
                    Archer Byington Glennon & Levine LLP
                    One Huntington Quadrangle, Suite 4C10
                    Melville, NY 11747

For Respondent:     Ann Odelson, Esq.
                    Carroll McNulty & Kull, LLC
                    570 Lexington Avenue, 8th Floor
                    New York, NY 10022

                    Samuel Zurik, Esq.
                    The Kullman Firm
                    1100 Poydras Street, Suite 1600
                    New Orleans, LA 70163
```

SEYBERT, District Judge:

        This dispute arose after Wood Group Power Operations LLC ("Respondent") terminated Thomas Rooney ("Rooney"), a member of Local 30, International Union of Operating Engineers, AFL-CIO, ("Petitioner"). After the parties arbitrated the dispute, Petitioner commenced this action to confirm the arbitration award

against Respondent.  (Pet., Docket Entry 1.[1])  This Court confirmed the award and entered judgment in favor of Petitioner on August 22, 2014.  (Judgment, Docket Entry 29.)  Currently pending before the Court are Petitioner's motion to enforce the August 22, 2014 judgment (Docket Entry 30) and Magistrate Gary R. Brown's Report and Recommendation dated February 10, 2017 (the "R&R") recommending that this Court grant Petitioner's motion in part and deny it in part.  (R&R, Docket Entry 40, at 13.)  Specifically, Judge Brown recommends that Respondent be required to "pay a sum representing back pay for Rooney beginning with his March 14, 2012 termination through and including November 11, 2012, the date of the arbitration decision."  (R&R at 12.)  He further recommends that the Court deny Petitioner's request for back pay from November 11, 2012 to May 2, 2014.  (R&R at 9-11.)  Finally, he recommends that Petitioner be awarded costs and attorneys' fees.  (R&R at 13.)  Petitioner and Respondent filed objections to the R&R.  (Pet'r's Obj., Docket Entry 41; Resp't's Obj., Docket Entry 42.)  For the following reasons, Petitioner's objections are OVERRULED, Respondent's objections are OVERRULED, and the R&R is ADOPTED AS MODIFIED.  Petitioner's motion to enforce is GRANTED IN PART and DENIED IN PART as set forth below.

---

[1] When citing to the documents attached to the Petition the Court will use the numbers assigned by the Electronic Case Filing System.

BACKGROUND

The Court assumes familiarity with the facts of this case, which are detailed in Judge Brown's R&R and this Court's Order dated August 22, 2014. (See generally R&R; 2014 Order, Docket Entry 28.)

Briefly, Rooney was employed by Respondent as an operating engineer and maintenance technician ("OEMT"), and his employment was terminated on March 14, 2012. (Order at 2.) Thereafter, Petitioner challenged Rooney's termination and sought relief from an arbitrator pursuant to the collective bargaining agreement between the parties (the "CBA"). (Order at 2.) On November 21, 2012, Arbitrator Randall M. Kelly (the "Arbitrator") concluded that Respondent failed to comply with the CBA when it dismissed Rooney. (Arbitration Award, Pet. Ex. A, Docket Entry 1, at 5-26.) The Arbitrator directed that Rooney "be reinstated to his former position or its equivalent with full back pay for periods he was physically able to work and no loss of seniority" (the "Arbitration Award"). (Arbitration Award at 26.)

The parties dispute whether Rooney was properly reinstated. Respondent claims that Rooney was reinstated in December 2012 but was not assigned to perform his OEMT duties because of medical restrictions. (Resp't's 56.1 Stmt., Docket Entry 19, ¶ 20.) Respondent alleges that Rooney did not cooperate during a physical examination before he returned to work and that

Petitioner failed to respond to requests for information regarding Rooney's physical capabilities. (Resp't's 56.1 Stmt. ¶¶ 18-20.) Petitioner denies that Rooney was reinstated. (Pet'r's 56.1 Counterstmt., Docket Entry 23, ¶ 19.) Petitioner contends that Rooney was cooperative during the examination and claims that it is not aware of any outstanding requests for information regarding Rooney's physical limitations. (Pet'r's 56.1 Counterstmt. ¶ 20.) Petitioner alleges that, at that time, Rooney was "ready, willing and able to perform the essential functions of his job." (Pet'r's 56.1 Counterstmt. ¶ 21.) Additionally, Petitioner alleges that if Rooney had physical limitations, Respondent failed to accommodate him; particularly, Respondent failed to offer him light duty work even though it had previously offered such work to Rooney and to other employees. (Pet'r's 56.1 Counterstmt. ¶ 21.) Petitioner submitted grievances related to Respondent's failure to reinstate Rooney, which were denied by Respondent on December 27, 2012. (Ford Decl., Docket Entry 14-3, ¶¶ 32-33.)

On April 25, 2013, Petitioner filed a Petition to confirm the Arbitration Award. (See, Pet.) The award was confirmed on August 22, 2014, and judgment was entered the same day. (See 2014 Order; See, Judgment.) In the interim, on May 2, 2014, Respondent terminated Rooney a second time. (Howell Decl., Docket Entry 30-1, ¶ 10.) Petitioner filed a complaint with the National Labor Relations Board (the "NLRB Complaint") regarding the second

4

termination, and the parties entered into a settlement agreement to resolve that case. (Howell Decl. ¶¶ 18-19.)

On May 4, 2016, Petitioner filed a motion to enforce the judgment entered in this matter and requested that the Court award Rooney back pay from March 14, 2012 (the first termination) to May 2, 2014 (the second termination) totaling $145,761.11, interest of $20,306.72 and attorneys' fees and costs. (Pet'r's Mot., Docket Entry 30; Pet'r's Br., Docket Entry 31, at 2.) Respondent opposed the motion on June 3, 2016, and Petitioner filed its reply on June 17, 2016. (Resp't's Opp., Docket Entry 33; Pet'r's Reply, Docket Entry 34.)

On October 13, 2016, the undersigned referred the motion to Judge Brown for a report and recommendation on whether the motion should be granted. (Referral Order, Docket Entry 39.) Judge Brown issued his R&R on February 10, 2017, recommending that this Court grant Petitioner's motion in part and deny it in part. (See, R&R.) As noted above, Petitioner and Respondent filed objections to the R&R.

Respondent has never made any payments to Rooney pursuant to the Arbitration Award or the Court's judgment. (R&R at 4.)

### THE R&R

Judge Brown's analysis separated Petitioner's requested relief into two categories—-back pay from the March 14, 2012

termination to the November 11, 2012 Arbitration Award ("Pre-Decision Back Pay") and back pay from November 12, 2012 to the May 2, 2014 termination ("Post-Decision Back Pay").[2] (R&R at 8-9.) Regarding Pre-Decision Back Pay, Judge Brown concluded that Respondent has offered no explanation for its failure to comply with the Arbitration Award. (R&R at 8.) Judge Brown found that, contrary to Respondent's arguments, the Arbitrator addressed Rooney's prior injury and physical limitations in his decision and still awarded back pay. (R&R at 8.) Judge Brown also found that Respondent had an "opportunity to raise inability to work as a defense to the back pay award." (R&R at 8.) Thus, he concluded that Respondent was required to pay Rooney Pre-Decision Back Pay. (R&R at 8-9.)

Next, Judge Brown considered whether Rooney was entitled to Post-Decision Back Pay. (R&R at 9-10.) He determined that back pay through May 2014 was not contemplated by the Arbitration Award, because "the implicit assumption is that such reinstatement would happen quickly, and . . . back pay would stem from a period beginning with the March 14, 2012 termination and ending with his reinstatement in or around November 2012." (R&R at 9.) Judge Brown reasoned that Respondent's back pay obligation could not

---

[2] Initially, Judge Brown rejected Respondent's argument that Petitioner's motion to enforce the Court's judgment was untimely. (R&R at 4-7.)

6

"continue indefinitely" and that "[Petitioner's] attempt to bootstrap a period of nearly eighteen months after the arbitration determination far exceeds the bounds of the decision." (R&R at 9-10.) Judge Brown explained that, because the issue of Rooney's reinstatement arose after the Arbitration Award, "the issue of Respondent's failure to fully reinstate Rooney is a new and separate issue that was never addressed by the arbitrator in the arbitration hearings" and should have been the subject of a subsequent arbitration. (R&R at 11 (internal quotation marks and citation omitted).) He pointed out that after Respondent allegedly failed to reinstate Rooney, Petitioner filed two grievances against Respondent--presumably because Petitioner recognized that the issue needed to be brought to an arbitrator. (R&R at 10.) Thus, Judge Brown recommends that the Court grant Petitioner's motion in part and direct Respondent to pay Rooney Pre-Decision Back Pay-- that is, back pay for the period beginning with his March 14, 2012 termination through and including the date of the Arbitration Award, November 11, 2012. (R&R at 12.) Further, he recommends that the parties meet and confer in an effort to stipulate the appropriate amount. (R&R at 12.)

Finally, Judge Brown recommends that Petitioner be awarded attorneys' fees and costs based on Respondent's "unexcused failure or refusal to comply with the arbitrator's decision or the August 22 judgment." (R&R at 13.) He recommends that the Court

7

grant Petitioner leave to file a separate application specifying its attorneys fees and costs and attaching supporting documentation.  (R&R at 13.)

DISCUSSION

I.  Legal Standard

"When evaluating the report and recommendation of a magistrate judge, the district court may adopt those portions of the report to which no objections have been made and which are not facially erroneous."  Walker v. Vaughan, 216 F. Supp. 2d 290, 291 (S.D.N.Y. 2002) (citation omitted).  A party may serve and file specific, written objections to a magistrate judge's report and recommendation within fourteen days of being served with the recommended disposition.  See FED. R. CIV. P. 72(b)(2).  Upon receiving any timely objections to the magistrate judge's recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3).  A party that objects to a report and recommendation must point out the specific portions of the report and recommendation to which they are objecting.  See Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002).

When a party raises an objection to a magistrate judge's report, the Court must conduct a de novo review of any contested sections of the report.  See Pizarro v. Bartlett, 776 F. Supp.

8

815, 817 (S.D.N.Y. 1991). However, where a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." Walker, 216 F. Supp. 2d at 291 (internal quotation marks and citation omitted).

After a court has confirmed an arbitration award, the award "become[s an] enforceable court order[ ]." Zeiler v. Deitsch, 500 F.3d 157, 170 (2d Cir. 2007). The judgment is limited to the express terms of the underlying arbitration award, and the court "may not enlarge upon those terms" in the course of enforcement proceedings. Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council, 523 F. App'x 756, 760 (2d Cir. 2013). Moreover, "when a petition for enforcement involves a new dispute . . . enforcement must be denied." Hellman v. Program Printing, Inc., 400 F. Supp. 915, 918 (S.D.N.Y. 1975).

II. Respondent's Objections

At the outset, Respondent makes two related arguments. First, Respondent argues that Judge Brown erred when he found that there was no reason for its non-compliance with the back pay award. (Resp't's Obj. at 2.) Respondent contends that it has not complied because the Arbitration Award does not specify Rooney's damages or provide a method for calculating them. (Resp't's Obj. at 2.) Second, Respondent argues that "compliance with the arbitrator's award required evidence outside the scope of the award." (Resp't's

9

Obj. at 4.) Petitioner responds that, regardless, Respondent was required to "extend an unconditional offer of reinstatement" and that Respondent's claim that it was unable to reinstate Rooney due to his physical limitations is not supported by the evidence. (Pet'r's Opp. to Obj., Docket Entry 41, at 4.)

Respondent is partly correct that the Arbitrator did not specify Rooney's damages. The Arbitration Award states only that Rooney is entitled to "full back pay for the periods he was physically able to work." (Arbitration Award at 26.) However, the fact that the Arbitrator did not specify the exact amount of back pay due does not relieve Respondent of liability.[3] The Arbitration Award, and the Court's judgment, require that Respondent compensate Rooney for the periods during which he was able to work. Because no payments have been made, Respondent has failed to comply with a court order. As Judge Brown pointed out, the Arbitrator discussed Rooney's injury and physical limitations in his decision and nevertheless determined that a back pay award

---

[3] Respondent appears to blame the Arbitrator and Petitioner for its failure to comply. (See Resp't's Obj. at 2.) ("[T]his failure on the Arbitrator's part to include a clear remedy and the concomitant duty of [Petitioner] to prove its damages, are more than substantial justification for Respondent's failure to pay . . . .") However, Respondent cannot shift blame. It could have sought clarification or resolution by the Arbitrator if it was truly concerned about complying in a timely manner.

was warranted.[4] The Court must enforce the Arbitration Award and judgment regardless of Respondent's contentions that the Arbitrator failed to take certain circumstances into account or the fact that the parties' disagree on the amount of back pay due. See Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280, 286 (S.D.N.Y. 2007) (stating that "a court may not conduct a reassessment of the evidence" in the course of proceedings related to an arbitration award).

Third, Respondent argues that it should not be required to pay attorneys' fees and costs because it was unable to comply with the Arbitration Award due to the ambiguities surrounding the back pay award. (Resp't's Obj. at 7.) Respondent alleges that it "repeatedly sought information regarding Rooney's fitness for duty in an attempt to determine how to calculate back pay," and that as a result, "there is not an unexcused failure or refusal to comply." (Resp't's Obj. at 7-8.) "When a challenger refuses to abide by an arbitrator's decision without justification, attorneys' fees and costs may properly be awarded." Int'l Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d

---

[4] Respondent argues that "[t]he R&R's suggestion that the period Rooney was able to work is included in 'a detailed history' in the Arbitrator's decision is simply untrue." (Resp't's Obj. at 2.) However, the R&R does not suggest this. Rather, the R&R states that the Arbitrator appears to have considered Rooney's ability to work during the proceedings. (R&R at 8.) As a result, Respondent could have raised Rooney's alleged inability to work as a defense. (R&R at 8.)

11

Cir. 1985). Judge Brown found that an award of fees and costs was warranted based on "Respondent's conduct . . . including the arguments raised on this application as well as the unexcused failure or refusal to comply." (R&R at 13.) Specifically, Judge Brown determined that Respondent "proffer[ed] arguments that border on the frivolous" and advocated a "disingenuous" position. (R&R at 3, n.1.) Respondent fails to address this issue in its objections, and in fact, failed to specifically oppose Petitioner's request for fees and costs initially.[5] (See generally Resp't's Opp; Resp't's Sur-Reply, Docket Entry 36-1.) Nevertheless, the Court declines to make a determination on the issue of attorneys' fees and costs at this juncture. Plaintiff is granted leave to file a separate application, along with supporting documentation, at which time the Court will consider whether an award of fees and costs is warranted.

Accordingly, Respondent's objections are OVERRULED.

III. Petitioner's Objection

Petitioner objects to Judge Brown's recommendation that Rooney be awarded back pay only for the period between his

---

[5] Respondent chose to oppose Petitioner's motion solely on procedural and jurisdictional grounds while purportedly "reserv[ing] its rights and defenses" on the merits. (See Resp't's Opp. at 1, n.1.) Judge Brown found this reservation to be meaningless as Respondent made arguments regarding the merits of this dispute. However, Respondent did not address Petitioner's request for fees and costs.

12

March 14, 2012 termination and the November 11, 2012 Arbitration Award. (Pet'r's Obj. at 1.) It argues that Judge Brown's "formula of splitting back pay into two components . . . has no basis in law or fact" and that the facts in the cases cited by Judge Brown are distinguishable from the facts in this matter. (Pet'r's Obj. at 1.) Specifically, Petitioner contends that this is not a case where an intervening event occurred after the issuance of the award, and as such, there is no "new and separate issue" requiring another arbitration. (Pet'r's Obj. at 1.) Respondent maintains that the case law cited by Petitioner is not analogous and that Petitioner and Rooney failed to cooperate and provide information to aid in the calculation of back pay. (See Resp't's Opp. to Obj., Docket Entry 43, at 3-5.)

The Court finds no error in Judge Brown's determination. When the Arbitrator issued the award in this case, he only determined whether Rooney's discharge on March 14, 2012 was a violation of the CBA and the appropriate remedy. (Arbitration Award at 7.) Undisputedly, the award was based solely on the evidence presented to the Arbitrator during the arbitration proceeding. Thus, the parties' post-decision dispute regarding whether Rooney was properly reinstated was not considered by the Arbitrator, and indeed, could not have been considered since the events occurred after the award was rendered. As discussed above, Respondent must comply with the award. However, Petitioner may

13

not use the award to collect damages beyond the scope of the Arbitration Award. (See R&R at 9 ("The proposed [back pay] period encompasses the arbitration award, the confirmation thereof, the purported failure of [Respondent] to properly reinstate Rooney, the subsequent grievances, and the failure of the Union to arbitrate the grievances. One cannot read the arbitrator's award this broadly.").)

Petitioner argues that Hellman v. Program Printing, Inc., 400 F. Supp. 915 (S.D.N.Y. 1975), and Int'l Chemical Workers Union (AFL-CIO), Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43 (2d Cir. 1985), two cases cited by Judge Brown, are not analogous because enforcement was denied in those cases due to intervening circumstances. (Pet'r's Obj. at 1-2.) In BASF Wyandotte, the arbitrator awarded back pay and reinstatement after he determined that the termination of Edsall Walker ("Walker") breached the parties' collective bargaining agreement. BASF Wyandotte, 774 F.2d at 44. After the award was issued but before the completion of enforcement proceedings, the union and the employer executed a new collective bargaining agreement pursuant to which Walker's position was removed from the bargaining unit. Id. During the enforcement proceedings, the employer argued that it could not fully comply with the arbitration award because Walker's position was eliminated in the new agreement. Id. at 44-45. The district court disagreed and held that the employer was

14

required to reinstate Walker and was responsible for back pay after the execution of the new collective bargaining agreement, despite the elimination of Walker's position. Id. The Second Circuit reversed, holding that the employer was required to pay back pay only until the effective date of the new collective bargaining agreement and that "the issue of Walker's right to be rehired under the new collective bargaining agreement [was] a new and separate issue" that must be resolved in arbitration. Id. at 46.

Similarly, in Hellman, the arbitrator ordered that an employer reinstate a seasonal employee with back pay. Hellman, 400 F. Supp. at 917. The employee was reinstated, but when the employer lost a client, the employee was not hired back for the following season. Id. The union sought enforcement of the arbitration award, but the district court denied the request. Id. at 918. The court concluded that "the issue of whether the respondent must again rehire [the employee], in light of the alleged change in circumstances, is a proper subject for arbitration." Id.

The Court acknowledges that the circumstances in BASF-Wyandotte and Hellman are not identical to the circumstances in this case; however, the general rule still applies. All three cases involve significant post-decision disputes that are outside the scope of the arbitration award. See BASF Wyandotte, 774 F.2d at 46 ("[U]nless it is beyond argument that there is no material

15

factual difference between the new dispute and the one decided in the prior arbitration that would justify an arbitrator's reaching a different conclusion, the case must go to fresh arbitration rather than to the court for judicial enforcement.") (internal quotation marks omitted). Respondent contends that Rooney was reinstated in December 2012 but has not been assigned to perform his duties due to physical limitations. (Resp't's 56.1 Stmt. ¶ 20.) Petitioner alleges that Rooney was never reinstated.[6] (Pet'r's 56.1 Counterstmt. ¶ 19.) This dispute was never arbitrated, and the Court declines to resolve it. Whether Rooney's reinstatement was legitimate is outside the scope of the Arbitration Award, and during these enforcement proceedings, the Court "may not enlarge upon . . . [the award's] terms." Nat'l Football League, 523 F. App'x at 760. Although not dispositive, Petitioner likely recognized that the reinstatement dispute was a separate issue when it filed grievances on Rooney's behalf regarding his reinstatement shortly after the Arbitration Award was issued.[7] (See Ford Decl., ¶¶ 32-33.)

---

[6] While not relevant to the Court's determination here, it is unclear how Rooney could have been terminated for a second time on May 2, 2014 if, as Petitioner argues, he was not previously reinstated. (See Howell Decl. ¶ 10.)

[7] Respondent denied the grievances, and Petitioner never pursued arbitration. (Ford Decl. ¶¶ 33-34.)

16

Petitioner argues that this case is analogous to Case-Hoyt Corporation v. Graphic Communications International Union Local 503, 975 F. Supp. 231 (W.D.N.Y. 1997) and United Steelworkers of America, AFL-CIO, CLC v. Dayton-Walther Corporation, Muncie Division, 657 F. Supp. 50 (S.D. Ind. 1986). (Pet'r's Obj. at 6-7, 11-12.) However, in these cases, it was undisputed that the employer did not comply with the arbitration award. See Case-Hoyt, 975 F. Supp. at 232; Dayton-Walther, 657 F. Supp. at 53.[8] As a result, there was no dispute that could have been considered a new and separate issue that required arbitration. Additionally, these cases are not binding on this Court, particularly in light of the unique circumstances here.

Petitioner's remaining arguments do not change the result. Petitioner argues that back pay is typically awarded from the date of discharge to the date the employee is "actually reinstated or declines an unconditional offer." (Pet'r's Obj. at 4.) Even if the typical back pay award was relevant here, it is unclear if Rooney was reinstated by Respondent. Petitioner also contends that arbitrating the issue of Respondent's compliance is

---

[8] Petitioner also cites United Steelworkers of America, Dist. 36, Local 8249 v. Adbill Management Corp., 754 F.2d 138 (3d Cir. 1985). Similar to Case-Hoyt and Dayton-Walther, in that case it was undisputed that the employer did not reinstate a group of employees after an arbitration award. United Steelworkers, 754 F.2d at 142. Further, the Court made no determination on the issue of back pay, as back pay was not awarded by the arbitrator.

17

outside the scope of the CBA. (Pet'r's Obj. at 8-9.) The Court declines to interpret the scope of the CBA, as that issue is also not before the Court. As discussed, the Court's authority in these proceedings is limited to enforcing the judgment confirming the Arbitration Award.

Accordingly, Petitioner's objection is OVERRULED. Rooney is entitled to back pay for periods he was physically able to work between March 14, 2012 and November 11, 2012. The parties should meet and confer regarding the amount of back pay due, and if they cannot agree, Petitioner may make an application for further relief, including an inquest if necessary.

## CONCLUSION

For the foregoing reasons, Petitioner's and Respondent's objections are OVERRULED, and the R&R is ADOPTED AS MODIFIED. Petitioner's motion to enforce the judgment (Docket Entry 30) is GRANTED IN PART and DENIED IN PART. Specifically, Respondent is directed to pay Rooney back pay for the periods he was physically able to work beginning with his March 14, 2012 termination through and including the date of the Arbitration Award, November 11, 2012. If the parties cannot agree on the amount, they may seek further relief from the Court. The Court declines to determine whether Petitioner is entitled to attorneys' fees and costs at this time. Petitioner is granted leave to file a separate motion with the

appropriate documentation within thirty (30) days of the date of this Memorandum and Order.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   March  27 , 2017
         Central Islip, New York